# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

GERMAINE MONTES,

Plaintiff,

v.                                                          1:21-CV-303
                                                            (DNH/ATB)

CONNOR O'SHEA, et al.,

Defendants.

GERMAINE MONTES, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil complaint filed by pro se plaintiff Germaine Montes. (Complaint ("Compl.") (Dkt. No. 1).  Plaintiff has also moved to proceed in forma pauperis ("IFP").  (Dkt. No. 2).

## I.  __IFP Application__

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2).  After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. **Complaint**

Plaintiff alleges that on or about February 16, 2021, defendant Albany Police Department Detective O'Shea "filed a false complaint" against him. (Compl. at 7).[1]

---

[1] The court will cite to the pages of the complaint that have been assigned by the court's electronic filing system CM/ECF.

According to the New York State arrest report attached to plaintiff's complaint, plaintiff was arrested for possessing a loaded firearm on February 15, 2021 at approximately 10:46 p.m., in the rear parking lot of a hotel in Albany, New York. (*Id.* at 15). Plaintiff further alleges that defendant Detective Graham "arrested [him] based on the false complaint," and defendant Detective Brace "help[ed] and assisted" in the arrest. (*Id.* at 7).

Plaintiff states that a criminal action was subsequently commenced "under The People of the State of New York ([defendant] Letitia James)." (*Id.*). "[Defendant Albany City Court Judge] Holly Trexler then proceeded and presided over the fraudulent complaint," and "sent" plaintiff to "Albany County Correctional and Rehabilitative Services Center [("Albany CCF")] against his will." (*Id.*).

Plaintiff alleges that defendant public defenders DeSorbo and Schupp represented plaintiff in connection with the "false complaint," without his consent. (*Id.* at 9). Plaintiff also states that although he asked that none of his rights be waived, DeSorbo and Schupp "wrote a letter to [Judge Trexler] . . . and ask[ed] that [his] case be sent to grand jury without [his] consent."[2] (*Id.*).

Plaintiff then alleges that defendant Albany County Sheriff Apple "placed and/or had his deputy sherriff(s) place[]" him in custody and held him against his will based on the "fraudulent complaint filed by defendant O'Shea." (*Id.*). Plaintiff states that he was held at Albany CCF against his will by defendant Superintendent of Albany CCF

---

[2] Plaintiff has attached a February 22, 2021 correspondence from DeSorbo to Judge Trexler requesting that the court "waive his case up for action of the Grand Jury*,"* per plaintiff's request. (*Id.* at 19).

3

Lyons. (*Id.*). According to plaintiff, Superintendent Lyons "locks people on a dirty tier and a dirty cell. Everyone is closed in together and put next to other possible covid infected people and no one is allowed to clean th[eir] cell." (*Id.*). Plaintiff alleges that those in custody are not provided cleaning supplies, and no one is otherwise hired to clean the tiers. (*Id.*). He states that the food at Albany CCF causes him "pains in [his] stomach," but "medical" refuses to treat him or provide pain medication. (*Id.*).

The court construes plaintiff's complaint to raise the following causes of action: (1) claims pursuant to 18 U.S.C. § 242 against defendants O'Shea, Graham, and Brace for depriving plaintiff of his rights under color of law; (2) claims pursuant to 18 U.S.C. § 241 against defendants James, Trexler, DeSorbo, Schupp, Apple and Lyons for conspiracy against rights, (3) 42 U.S.C. § 1983 claims against defendants O'Shea, Graham, Brace, and Apple for false arrest/imprisonment, and (4) 42 U.S.C. § 1983 claims against defendant Lyons based on conditions of confinement and inadequate medical care. Plaintiff seeks damages in the amount of "$250.000 from each defendant . . . [and] any and other further relief this court deems just and proper." (*Id.* at 13). Based on the above summary of plaintiff's complaint, this court will conduct an initial review of plaintiff's claims.

## III. <u>Criminal Statutes</u>

### A. **Legal Standards**

Crimes are prosecuted by the government, and not by private parties. *Corrado v. New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL 3181128, at \*5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15

(2d Cir. 2006)). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009).

## B.    Application

Plaintiff alleges that the defendants have violated 18 U.S.C. §§ 241 (conspiracy against rights) and 242 (deprivation of rights under color of law).  Both of these federal statutes provide for criminal penalties, and there is no language in either which explicitly authorizes, or implies, a private right of action.  *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (summary order) (no private right of action for 18 U.S.C. §§ 241, 242); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce, among other statutes, § 241).  Thus, no matter plaintiff's assertions surrounding his "citizenship,"[3] he may not enforce these criminal statutes against any of the defendants, and the complaint may be dismissed in this regard.

---

[3] Based on plaintiff's allegations, it appears he identifies as a "sovereign citizen." (Compl. at 5). The Second Circuit has described sovereign citizens as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013).

## IV.    *Heck v. Humphrey*

### A.    Legal Standards

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.  The rule in *Heck* applies whether the conviction is federal or state. *See Carpenter v. Comm'r of IRS*, No. 3:13-CV-563, 2016 WL 7238792, at *4 (D. Conn. Dec. 14, 2016) (noting that *Heck* would apply to the plaintiff's case, when the plaintiff was convicted in federal court).

### B.    Analysis

Arguably, the complaint may be construed to allege section 1983 claims sounding in false arrest against Detectives O'Shea, Graham, and Brace; and/or false imprisonment against Sheriff Apple.  At this juncture, however, the court is unable to determine whether these causes of action are barred by *Heck.*  Although plaintiff's complaint states that he was arrested and confined to Albany CCF in conjunction with the underlying weapons possession charge, he does not specify the status of his criminal proceeding.[4]  If plaintiff's criminal action has since terminated, in order to recover damages for the purported false arrest and/imprisonment, he must set forth that

---

[4] Based on plaintiff's most recent submissions to this court, it appears he remains confined at the Albany CCF.  (*See* Dkt. No. 4).

6

the conviction or sentence has been resolved in his favor. Because plaintiff has not alleged sufficient facts in this regard, the court cannot determine whether these claims may survive initial review. Thus, these claims should be dismissed without prejudice, allowing plaintiff the opportunity to plead the status of the underlying criminal proceeding.

Furthermore, to the extent that plaintiff should amend his complaint to show that his false arrest/imprisonment claims are not barred by *Heck*,[5] it remains incumbent on him to allege more detailed facts plausibly suggesting a violation of his constitutional rights has occurred.[6] As it currently stands, plaintiff's complaint is replete with conclusory statements and "naked assertions devoid of further factual enhancement" with respect to these claims. *Iqbal*, 556 U.S. at 678 (internal citations and alterations omitted). To state a false arrest claim under New York law, a plaintiff must allege that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest

---

[5] The Second Circuit has held that "*Heck* bars a § 1983 claim based on an extant conviction, but it has no apparent application to an anticipated future conviction." *Stegemann v. Rensselaer Cty. Sheriff's Off.*, 648 F. App'x 73, 76 (2d Cir. 2016) (finding that since plaintiff's criminal trial was still ongoing, civil relief was not categorically barred by the favorable termination rule of *Heck*). Thus, if the plaintiff's criminal action in this case is still pending, *Heck* would be inapplicable.

[6] Plaintiff's false arrest and false imprisonment claims are addressed together for the purposes of this court's analysis. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.") (citations omitted).

constitutes justification and is a complete defense to an action for false arrest.")
(citations and quotations omitted).

Here, plaintiff does not describe the circumstances leading to his arrest, the
charges ultimately brought against him as a result of the arrest, or the status of his
criminal proceedings.  To be sure, "[i]t is not enough to declare, 'Defendants falsely
arrested [or detained] me[,]'" and plaintiff must provide sufficient factual allegations, in
the event that he chooses to amend his complaint, to plausibly state the elements of his
claims.  *Nelkenbaum v. New York*, No. 19-CV-7953, 2019 WL 5538052, at *3
(S.D.N.Y. Oct. 25, 2019).

## V.    Judicial Immunity

### A.    Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions
relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10
(1991). Judicial immunity has been created for the public interest in having judges who
are "at liberty to exercise their functions with independence and without fear of
consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial
immunity applies even when the judge is accused of acting maliciously or corruptly.
*Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S.
547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the
assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two
circumstances in which judicial immunity does not apply is when he or she takes action
"outside" his or her judicial capacity and when the judge takes action that, although

judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing *inter alia Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id*. (citing *inter alia Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id*. The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id*. (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id*. (citing *Mireles*, 502 U.S. at 12-13).

## B.    Application

In this case, plaintiff has named Albany City Court Judge Holly Trexler as a defendant.  Plaintiff alleges that Judge Trexler "presided over the fraudulent complaint" and sent plaintiff to Albany CCF against his will.  As previously discussed, the section 241 claim asserted against Judge Trexler is subject to dismissal because plaintiff has no right to enforce a federal criminal statute.  Notwithstanding, and to the extent plaintiff

seeks to impose liability against Judge Trexler on any alternative basis,[7] it is clear that Judge Trexler's actions, as described by plaintiff, occurred while she was presiding over plaintiff's state criminal action. *See Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature."). Thus, the doctrine of judicial immunity precludes plaintiff's action against Judge Trexler under any other perceived theory of liability.

## VI.   **Prosecutorial Immunity/Personal Involvement**

### A.   **Legal Standards**

#### 1.   **Prosecutors**

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502–503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67–68 (2d

---

[7] This is true even if the court assumes that plaintiff is attempting to sue Judge Trexler under section 1983.

Cir. 2006).

## 2. Personal Involvement

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations, and supervisory officials may not be held liable merely because they held a position of authority.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  The Second Circuit has recently revisited its standard for determining personal involvement and supervisor liability, articulating the proper standard for the courts in this circuit to utilize.  *Tangreti v. Bachmann*, 983 F.3d 609, 615-19 (2d Cir. 2020).  Joining other circuits, the Second Circuit held that there is no "special" rule for supervisory liability. *Id.* at 618.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Quoting a 10th Circuit case, the *Tangreti* court stated that "'[a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless that is the same state of mind required for the constitutional*

*deprivation he alleges*.'" *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614

F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added,

other citations omitted).  The supervisor must have committed the violation him or

herself, not by the supervision of others who committed the violation. *Id.*  Likewise, the

supervisor must personally display the requisite state of mind, depending on the

violation at issue. *Id.*

### B.    Application

Plaintiff is seeking damages against New York Attorney General ("AG") Letitia

James in conjunction with the criminal proceedings brought against him.  However, the

complaint is devoid of any facts explaining how AG James, or anyone in the New York

Attorney General's Office, was involved in plaintiff's criminal action.  Plaintiff was

arrested by the Albany Police Department for the crime of Criminal Possession of a

Weapon in the Second Degree.  He was arraigned in front of Albany City Court Judge

Trexler.  Generally, these categories of local crime are prosecuted by the county district

attorney's office, and plaintiff has presented no basis for this court to find that AG

James had any personal involvement in his criminal proceeding.  *See Baez v. Hennessy*,

853 F.2d 73, 76-77 (2d Cir. 1988) (discussing the nuances between the offices of the

district attorney and attorney general and recognizing that in New York "the district

attorney . . . [decides] . . . when and in what manner to prosecute a suspected

offender.").

Moreover, in the unlikely event that plaintiff could show AG James' personal

involvement, any suit for damages against her in conjunction with initiating the

criminal proceeding would be barred by absolute immunity. *See Brooks v. Spitzer,* No. 9:13-CV-1483 (GLS/ATB), 2015 WL 1313243, at *4 (N.D.N.Y. Mar. 24, 2015) (adopting magistrate's recommendation to dismiss the complaint against the former Attorney General based on absolute prosecutorial immunity).

## VII.  Eleventh Amendment

### A.    Legal Standard

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir.1995) (*citing Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id*. at 815 n. 3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n. 1 (2d Cir.1991) (citations omitted).

### B.    Application

Plaintiff appears to name the State of New York as a defendant in conjunction with AG James in his complaint.  To the extent that plaintiff is attempting to sue the state of New York and/or AG James in her official capacity for damages, the claim is subject to dismissal based on Eleventh Amendment immunity.

## VIII. Defense Counsel

### A.    Legal Standards

To state a claim under section 1983, the defendant must act "under color of state law." *O'Donoghue v. United States Social Security Administration*, 828 F. App'x 784,

787 (2d Cir. 2020) (citation omitted). "Private attorneys, whether court appointed or privately retained, are generally not liable under § 1983." *Kunz v. Brazill*, No. 6:14-CV-1471 (MAD/TWD), 2015 WL 792096, at *7 (N.D.N.Y. Feb. 25, 2015) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.") (citation omitted)); *Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at *3 (E.D.N.Y. Apr. 28, 2014) ("[P]ublic defenders, including Legal Aid attorneys, court-appointed counsel and private attorneys do not act under the color of state law merely by virtue of their position.").

However, "an otherwise private person or entity," including private or "appointed defense counsel, can act 'under color of state law' if he or it engages in a conspiracy with state officials to deprive a person of his federal rights." *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 546 (E.D.N.Y. 2004) (citing *Tower v. Glover*, 467 U.S. 914, 920 (1984)); *see McClinton v. Suffolk Cnty. Police 3rd Precinct*, No. 12–CV–3777, 2014 WL 1028993, at *4 (E.D.N.Y. Mar. 14, 2014). Claims alleging conspiracies to violate civil rights must be pleaded with specificity and "[a]n otherwise invalid 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" *Brewster*, 349 F. Supp. 2d at 546. Rather, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d. Cir. 2002)

14

(citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999)).

### B.    Application

As previously discussed, this court recommends dismissal of the § 241 claims against defendant public defenders DeSorbo and Schupp. To the extent plaintiff intends to challenge the conduct of these defendants under any other theory of liability, including ineffective assistance of counsel, dismissal is warranted.  In their role as plaintiff's defense attorneys, DeSorbo and Schupp were not acting under the color of state law for purposes of § 1983.  Moreover, plaintiff does not plausibly allege that his attorneys acted jointly, or conspired, with a state actor to deprive plaintiff of some constitutional rights.  Other than citing to federal criminal statute § 241 (conspiracy against rights), plaintiff fails to advance any factual allegations that would support such a claim.  Rather, plaintiff's complaint focuses on the attorneys' allegedly deficient representation of him.  Accordingly, plaintiff is barred from asserting liability against DeSorbo and Schupp in his federal complaint.

## IX.    § 1983 Claims –  Defendant Lyons

### A.    Legal Standards

#### 1.    Conditions of Confinement

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  The due process clause is applicable because pretrial detainees have not yet been convicted of a crime and thus, may not be punished in any manner, cruel or otherwise. *Id.* (citations omitted).  A pretrial detainee may establish a

section 1983 claim for allegedly unconstitutional conditions of confinement by showing

that the defendant officers acted with deliberate indifference to the challenged

conditions. *Id.* In *Darnell*, the Second Circuit clarified the standard for deliberate

indifference as it applies to pretrial detainees. *Id.* at 29-37.

To establish a claim for deliberate indifference to conditions of confinement

under the Due Process Clause, the plaintiff must

> prove that the defendant-official acted intentionally to impose
> the alleged condition, or recklessly failed to act with
> reasonable care to mitigate the risk that the condition posed to
> the pretrial detainee even though the defendant-official knew
> or should have known, that the condition posed an excessive
> risk to health or safety.

*Id.* at 35. The Second Circuit concluded that deliberate indifference for due process

purposes must be defined "objectively." *Id.* However, any claim for a due process

violation requires more than mere negligence. *Id.* (citing *Kingsley v. Hendrickson*, __

U.S. __, 135 S. Ct. 2466, 2472 (2015)).

## 2. Medical Care

A pretrial detainee alleging deliberate indifference to serious medical needs

under the Fourteenth Amendment must establish: (1) that the detainee had a serious

medical need; and (2) that the defendant either: "acted intentionally to impose the

alleged condition" or "recklessly failed to act with reasonable care to mitigate the risk

that the condition posed to the pretrial detainee even though the defendant-official

knew, or should have known, that the condition posed an excessive risk to health or

safety." *Darnell*, 849 F.3d at 30, 35 (emphasis added); *Charles v. Orange Cnty.*, 925

F.3d 73, 86 (2d Cir. 2019); *see also Walker v. Wright*, No. 17-CV-425, 2018 WL

2225009, at \*5 (D. Conn. May 15, 2018) (noting that, while *Darnell's* holding was applied to a conditions of confinement claim, "[d]istrict courts in this Circuit have . . . applied *Darnell's* objective 'mens rea' prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"). "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim [under the Fourteenth Amendment] is defined objectively." *Darnell,* 849 F.3d at 35.

### B.    Application

The court construes plaintiff's complaint to raise Fourteenth Amendment conditions of confinement and medical care claims against Albany CCF Superintendent Lyons.  With respect to the former, plaintiff alleges that while confined to Albany CCF he was placed in a "dirty" environment, where everyone was "closed in together" and put next to "other possible covid infected people."  Plaintiff claims there were deficient cleaning supplies and/or personnel, and that the prison food caused him "pains in his stomach."  As for medical care, plaintiff claims that medical "refused to treat [him] or provide pain medication and more[.]"

Turning first to the conditions of confinement at Albany CCF, plaintiff's vague allegations impede this court's ability to determine whether the challenged conditions rise to the level of a constitutional violation.  To be sure, "[i]t is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death[.]"  *Rodriguez v. McCormick*, No. 3:20-CV-01019, 2021 WL 83503, at \*7 (D. Conn. Jan. 11, 2021) (internal quotations and citation omitted). Moreover, it is clear that "[u]nsanitary conditions, especially when coupled with other mutually enforcing

conditions . . . can rise to the level of an objective deprivation." *Darnell v. Pineiro*, 849 F.3d at 30 (citations omitted). Here, however, plaintiff's allegations of unpleasant conditions – a dirty tier and stomachaches from the food – fail to describe conditions so severe as to deprive plaintiff "of [his] basic human needs – *e.g.,* food, clothing, shelter, medical care, and reasonable safety," or which pose "an unreasonable risk of serious damage to [his] future health." *Id.; see e.g. Grant-Cobham v. Martinez,* No. 20-CV-1947, 2020 WL 2097807, at *2 (E.D.N.Y. May 1, 2020) (recognizing that plaintiff's primary grievance *may* amount to a violation of the constitution, but dismissing the complaint for failure to provide sufficient detail to the court in order to state a claim for unconstitutional conditions of confinement under § 1983). Nor does the court find that by referencing the *potential* risk of exposure to Covid-19, without more, plaintiff has plausibly alleged that his living conditions reflected a level of deprivation cognizable under the Fourteenth Amendment.

In addition, plaintiff has also failed to plausibly allege that defendant Lyons was directly involved in violating his constitutional rights at Albany CCF in this regard. Plaintiff alleges, generally, that Superintendent Lyons "locks people on a dirty tier and a dirty cell." This vague and conclusory statement fails to provide any factual detail as to how Superintendent Lyons participated in subjecting plaintiff to any unconstitutional conditions. The fact that Lyons holds a supervisory position at Albany CCF does not change the pleading standards required of plaintiff. Because plaintiff has failed to allege Lyons' specific acts relating to plaintiff's conditions at Albany CCF, the court does not find that Lyons was personally involved in this claim.

Plaintiff's Fourteenth Amendment medical care claim against defendant Lyons presents similar deficiencies. In his complaint, plaintiff alleges that "medical" refused to treat him, however he has failed to name any medical staff as defendants.[8] Plaintiff's claim of inadequate medical treatment is alleged only against Superintendent Lyons. Nevertheless, there is no allegation that Superintendent Lyons was personally involved with plaintiff's medical treatment, or any decisions to deny plaintiff medical care during his confinement at Albany CCF.

Moreover, plaintiff has not plausibly alleged the elements of a medical deliberate indifference claim. Plaintiff does not state any facts indicating that the alleged deprivation in medical care was "sufficiently serious," nor does he state how Superintendent Lyons "knew" or "should have known" that his failure to provide medical treatment would pose a substantial risk to plaintiff's health.

Plaintiff's complaint concludes with additional, fleeting allegations against Superintendent Lyons for "denying dental treatment," "writing material," and "15 minutes only outside their cell." (Compl. at 13). Plaintiff has not provided any factual bases for these claims, nor has he described with any detail Superintendent Lyon's direct involvement. For the reasons previously set forth by this court, these cursory allegations fail to plausibly allege a violation of constitutional proportion against Superintendent Lyons.

---

[8] Plaintiff has attached to his complaint a March 11, 2021 "Sick Call Request" which he purportedly filled out while confined at Albany CCF. (Compl. at 24). In the form, plaintiff states in relevant part that he has "not receive[d] any medical treatment and no one cares that this jail is dirty and disgusting. . . ." (*Id.*). The form was signed by an unknown member of the medical staff on March 12, 2021, indicating that a face-to-face encounter had been conducted. (*Id.*).

## X.    Opportunity to Amend

### A.    Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

The claims based on criminal statutes 18 U.S.C. §§ 241 and 242 may be dismissed with prejudice as against each named defendant, because these statutes do not provide for private causes of action.  In addition, the complaint may be dismissed with prejudice as to Judge Trexler based on judicial immunity, as any attempt to amend would be futile.  The complaint may also be dismissed with prejudice as to AG James, to the extent that plaintiff challenges any decisions or actions relating to the prosecution of his criminal case.

Plaintiff's claims against public defenders DeSorbo and Shupp may be dismissed without prejudice, but without leave to amend, because plaintiff's criminal counsel did not act under color of state law, and the court is without jurisdiction to consider any claims against them.[9]

---

[9] Because this court is recommending dismissal for want of jurisdiction as against DeSorbo and Schupp, this does not preclude plaintiff from suing counsel in another forum, if one exists, or from

The court will recommend dismissing the complaint as against Detective O'Shea, Detective Graham, Detective Brace and Sheriff Apple, to the extent plaintiff has alleged any claims sounding in false arrest/imprisonment. The court recommends dismissal of these claims without prejudice and with an opportunity to amend, in order to provide plaintiff the opportunity to allege the necessary details surrounding his criminal proceeding. This includes the status of the charges which formed the basis for the arrest, in addition to the pertinent details alleging specifically how his constitutional rights were violated by each individual defendant in the course of his arrest and confinement.[10]

The court will also recommend dismissing plaintiff's § 1983 claims against Superintendent Lyons without prejudice to amend, in order to provide plaintiff an opportunity to show that Superintendent Lyons was personally involved in the alleged constitutional violations, and to more fully describe the unsanitary conditions plaintiff was exposed to and the medical care he was denied.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that to the extent plaintiff bases his complaint upon

---

bringing any claims of malpractice, if appropriate, in state court. However, plaintiff may not pursue claims against counsel in federal court under section 1983.

[10] Regardless of any amendments by plaintiff, the court seriously questions whether he will be able to plausibly allege that defendant Apple, who appears to be the Sheriff of Albany County, was personally involved in any purported constitutional violations. *See* https://www.albanycounty.com/government/departments/county-sheriff

21

criminal statutes 18 U.S.C. §§ 241 and 242, those claims be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

    **RECOMMENDED,** that any claims alleged by plaintiff under § 1983 against defendants **CONNOR O'SHEA, CURTIS GRAHAM, ADAM BRACE,** and **CRAIG D. APPLE SR.** be **DISMISSED WITHOUT PREJUDICE** to plaintiff amending his complaint to cure the defects stated above as it relates to any Fourth Amendment false arrest and/or imprisonment claims, and it is

    **RECOMMENDED**, that plaintiff's claims against defendant **LETITIA JAMES** be **DISMISSED WITH PREJUDICE,** and it is

    **RECOMMENDED**, that plaintiff's claims against defendant **HOLLY TREXLER** be **DISMISSED WITH PREJUDICE,** and it is

    **RECOMMENDED**, that plaintiff's claims against defendants **EDMUND SCHUPP** and **GARY T. DESORBO** be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity to amend, and it is

    **RECOMMENDED,** that any claims alleged by plaintiff under § 1983 against defendant **MICHAEL J. LYONS** be **DISMISSED WITHOUT PREJUDICE** to plaintiff amending his complaint to cure the defects stated above in order to state proper Fourteenth Amendment conditions of confinement and medical care claims, and it is

    **RECOMMENDED**, that if the District Judge adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff

must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any further orders relating to service on the defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: April 6, 2021

Andrew T. Baxter
U.S. Magistrate Judge